UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| BRIAN MILLER | § | |
| Plaintiff. | § § § | |
| VS. | § | CIVIL ACTION NO. 3:18–CV–00284 |
| CITY OF TEXAS CITY, TEXAS; et al. | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court is City of Texas City's Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss"). Dkt. 15. This motion was referred to this Court by United States District Judge George C. Hanks, Jr. *See* Dkt. 25. After careful consideration of the pleadings and applicable law, the Court **RECOMMENDS** that the Motion to Dismiss be **GRANTED**.

# FACTUAL ALLEGATIONS[1]

On the evening of October 8, 2017, Sergeant B. Macik ("Macik") and Officer R. Dricks ("Dricks") of the Texas City Police Department arrested Plaintiff Brian Miller ("Miller") after a car chase. The pursuit ended when Miller parked his car in his father's driveway, exited the vehicle, and lay face down on the ground. Dricks jumped on top of Miller and clubbed Miller on the head with the butt of his loaded gun, causing Miller to moan in pain. Dricks clubbed Miller two additional times in the presence of Macik, resulting in Miller suffering a broken jaw and concussion. While Miller writhed in agony on the pavement, Macik tased him, causing additional pain.

Miller filed this lawsuit against Texas City, Macik, and Dricks, asserting claims under 42 U.S.C. § 1983 for violations of his constitutional rights. Specifically, Miller asserts that "[t]here is a pattern and practice of excessive force and condoning excessive force." *Id.* at 5. Miller also argues that Texas City has failed to train officers on how to properly use force on individuals during an arrest. "This pattern and practice," Miller

---

[1] The background facts are taken from Plaintiff's 1st Amended Original Complaint ("Complaint") (Dkt. 14) and are accepted as true for purposes of ruling on this Motion to Dismiss. *See Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (in reviewing a Rule 12(b)(6) motion to dismiss, a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff") (internal quotation marks and citation omitted). City of Texas City ("Texas City") filed its Motion to Dismiss on December 31, 2018. *See* Dkt. 15. Subsequently, Miller requested the opportunity to add a new defendant. On January 15, 2019, this Court issued a scheduling order allowing Miller to file a second amended complaint to add a new defendant. To prevent the need for Texas City to file an amended motion to dismiss, this Court ordered Miller not to add any additional factual allegations with respect to Texas City in the second amended complaint. *See* Dkt. 19. Accordingly, the Complaint and the second amended complaint contain the same allegations when it comes to Texas City.

asserts, "was ratified by Texas City Police Department when the department determined that the officers' actions were consistent with department policy." Dkt. 14 at 4.

In response to the Complaint, Texas City seeks the dismissal of all of Miller's claims.

## RULE 12(B)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a lawsuit for failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

When conducting its inquiry, the Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (internal quotation marks and citation omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S at 556 (internal quotation marks and citation omitted). It is important

to highlight that a motion to dismiss under Rule 12(b)(6) is "viewed with disfavor and is rarely granted." *Harrington v. State Farm & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (internal quotation marks and citation omitted).

"[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).[2]

## SECTION 1983 LIABILITY

"Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of 'any rights, privileges, or immunities secured by the Constitution and laws.'" *Goodman v. Harris Cty.*, 571 F.3d 388, 394–95 (5th Cir. 2009) (quoting 42 U.S.C. § 1983). It is well established that "municipalities cannot [b]e held liable on a *respondeat superior* [or vicarious liability] basis, i.e., a municipality cannot be held liable simply because one of its employees violated a person's federal rights." *Vanskiver v. City of Seabrook*, No. H-17-3365, 2018 WL 560231, at *2 (S.D. Tex. Jan. 24, 2018) (citation omitted). *See also Monell v. Dept. of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents."). As the Fifth Circuit has explained: "[a] municipality is almost never liable for an isolated unconstitutional act on the part of

---

[2] Texas City attaches to its Motion to Dismiss a December 28, 2017 letter addressed to Miller. This document is neither attached to nor incorporated in the Complaint. Although Miller does not object to the introduction of the December 28, 2017 letter, the Court does not consider the letter when deciding the Motion to Dismiss.

4

an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

To state a viable Section 1983 claim, "[a] plaintiff must identify: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom.'" *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 32 (5th Cir. 2002)). The crux of Texas City's Motion to Dismiss focuses on the first prong: is there an official policy or custom? An official policy or custom can be found in two forms:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

*Burge v. St. Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)). "To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)).

A.  POLICY LIABILITY

Texas City contends that the Complaint is deficient because there are "insufficient facts to establish that any of Texas City's customs, policies, practices, or procedures resulted in a violation of Mr. Miller's constitutional rights." Dkt. 23 at 5. The Court agrees and finds that the Complaint fails to identify any specific facts that plausibly suggest that Texas City has any policy or custom that resulted in a constitutional violation.

The Complaint merely alleges "[t]he City of Texas City has a custom, policy, practice, and procedure of using excessive force on individuals" and "[t]here is a pattern and practice of excessive force and condoning excessive force." Dkt. 14 at 4. Miller's allegations are general and conclusory and do not meet the bare pleading requirements of *Twombly* and *Iqbal*. Miller fails to identify a policy statement formally adopted by an official policymaker. Moreover, Miller does not describe with any specificity the alleged custom at issue in this case and never provides any factual support for the bald accusation that there is a custom. How widespread is the purported custom? What other cases or situations provide support for the naked assertion that there is a custom? These questions remain unanswered and that is fatal to Miller's claim. "The simple allegation that a 'policy or custom' existed, without reference to a specific policy or custom, is precisely the sort of formulaic pleading that does not pass muster under *Iqbal*." *Doe v. Harris Cty.*, 751 F. App'x 545, 550 (5th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678). The only factual support offered for the allegation that a policy or custom existed is what happened to Miller himself. "If this [C]ourt were to treat this allegation as sufficient, it would collapse municipal liability under § 1983 into respondeat superior, which [the Court] plainly may not do." *Id.*

6

A recent decision from the Northern District of Texas provides guidance on how to evaluate general and conclusory allegations in a Section 1983 case. *See May v. City of Arlington*, No. 3:16-CV-1674-L, 2019 WL 1275226, (N.D. Tex. Mar. 20, 2019). The district court in *May* observed:

> The allegations [in the plaintiff's complaint] regarding municipal policy are conclusory and extremely short on specificity, and underscore the paucity of specific allegations regarding municipal liability. Conclusory statements are not specific facts, and the description of the allegedly unconstitutional policies or customs of the City and their relationship to the alleged underlying constitutional violation are not specific.
>
> As stated before, Plaintiffs' allegations by and large are quite general and conclusory, and do not meet the pleading requirements of *Twombly* and *Iqbal*, or what is necessary to state a claim for municipal liability. Conclusions are not prohibited, but there must be sufficient factual bases to support the conclusions. While Plaintiffs have liberally sprinkled their Second Amended Complaint with the correct legal buzzwords, the use of such words alone will not state a claim upon which relief can be granted. Here, the allegations against the City, for the most part, are no more than a formulaic recital of some of the elements necessary to establish municipal liability.

*Id.* at *5. Applying this analysis to the present case leads to the unescapable conclusion that the boilerplate allegations found in Miller's Complaint fall far short of providing a basis to impose municipal liability under Section 1983.[3]

---

[3] Miller argues that the bystander liability claims against the individual defendants should proceed. This argument misses the mark as no bystander liability claim has been brought against Texas City. The bystander liability claims will proceed against the individual defendants since the individual defendants have not moved to dismiss the Complaint, but that does not impact Texas City's arguments when it comes to dismissal.

7

B.  **FAILURE TO TRAIN**

Next, Texas City seeks to dismiss Miller's failure to train claim because "Miller has not pleaded sufficient facts to impose municipal liability based on any defective training program or failure to discipline." Dkt. 15 at 14.

It is well-established that in some situations a municipality's failure to train police officers may give rise to Section 1983 liability. *See Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018). To properly state a claim for failure to train, Miller must allege facts showing: (1) Texas City's training policy procedures were inadequate; (2) Texas City was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused Miller's injuries. *See Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010).

"In order for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). Here, the Complaint does not identify a particular training program that is allegedly defective, nor explain how such a training program is deficient. Miller merely alleges "Texas City has a custom, policy, practice and procedure of . . . not disciplining or training officers adequately." Dkt. 14 at 4. This bare-boned allegation is insufficient. Threadbare allegations and recitations of the elements of a cause of action will not suffice to defeat a motion to dismiss. *See Iqbal*, 556 U.S. at 678. Miller makes only general, vague allegations and has offered no facts or analysis to support his claim. At the very least, Miller must explain how Texas City failed to train its officers.

Without facts to plausibly demonstrate any inadequacies in Texas City's training policies, Miller's failure to train claim must be dismissed. *See Zarnow*, 614 F.3d at 170 (affirming the district court's decision to grant a motion to dismiss when plaintiff failed to show the city's training practices were inadequate); *Fridge v. City of Marksville*, No. 1:15-CV-01998, 2019 WL 1923445, at *6 (W.D. La. Apr. 8, 2019) (granting a motion to dismiss when plaintiff failed to identify any specific inadequacies in the training materials or procedures); *Juarez v. Pizana*, No. 3:17-CV-00368-KC, 2018 WL 3769431, at *4 (W.D. Tex. June 25, 2018) (same); *Bryan v. City of Dallas*, 188 F. Supp. 3d 611, 621 (N.D. Tex. 2016) (same).

Additionally, Miller has not properly alleged that Texas City's failure to train its police officers amounted to deliberate indifference. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Comm'rs of Bryan City v. Brown*, 520 U.S. 397, 410 (1997). In a failure to train context, deliberate indifference generally requires at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation. *See Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001) ("Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference.") (citations omitted). To satisfy the deliberate indifference element of a failure to train claim, Miller must, therefore, allege "at least a pattern of similar violations." *Id.* (citation omitted). He has not done so. Remarkably, the Complaint includes no allegations of any prior incident

9

similar to the car chase and arrest in this lawsuit. As a result, the Court finds that Miller has failed to properly state a failure to train claim.

## C. RATIFICATION

Last, but not least, Miller alleges that Texas City is liable for the officers' conduct under a theory of ratification. The Complaint contains just two sentences addressing ratification: "[t]he actions of Dricks and Macik were determined to be consistent with department policy after an [Internal Affairs Department] investigation, thereby ratifying the behavior;" and "[t]his pattern and practice [of excessive force and condoning excessive force] was ratified by Texas City Police Department when the department determined that the officers' actions were consistent with department policy." Dkt. 14 at 3–4.

The ratification theory of municipal liability can be traced to the Supreme Court case *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988). In *Praprotnik*, a plurality of the Supreme Court recognized "a scenario in which a municipality could be held liable for a single episode of conduct initiated by a non-policymaker employee." *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004). The Supreme Court explained:

> [W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Praprotnik*, 485 U.S. at 127. The Fifth Circuit has recently held that the ratification theory is an appropriate basis for imposing municipal liability only in "extreme factual situations." *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017) (citations omitted).

Although the scope of the ratification theory is not always clearly defined, there is no question that "policymakers who simply go along with a subordinate's decision do not thereby vest final policymaking authority in the subordinate, nor does a mere failure to investigate the basis of a subordinate's discretionary decisions amount to such a delegation." *Milam*, 113 F. App'x at 627 (internal quotation marks, brackets, and citation omitted). Similarly, "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 848 (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161–62 (5th Cir. 1986)). These limitations on municipal liability are vital to prevent the ratification theory from becoming a theory of *respondeat superior*, a concept the Supreme Court has expressly rejected. *See Bd. of Comm'rs of Bryan City*, 520 U.S. at 403 (a local governmental entity is not vicariously liable under Section 1983 for its employees' conduct); *Praprotnik*, 485 U.S. at 126 ("If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability.").

The Fifth Circuit's opinion in *Peterson* is instructive. In that case, Peterson and his wife went out for a birthday dinner and a night of dancing. *See* 588 F.3d at 843. After consuming several drinks, they decided to sleep it off in their truck rather than risk driving. *See id.* Security guards noticed the two sleeping in the truck and called the police. *See id.* When the police officers arrived, they tried to rouse the two individuals. *See id.* Peterson, still asleep and disoriented, kicked at one of the officers and told her to leave him alone. *See id.* The officer grabbed Peterson and instructed him to wake up and get out of the vehicle. *See id.* Peterson, apparently still dozing, hit her on the arm. *See id.* According

11

to Peterson, the officers dragged him out of the truck by his clothes and wrestled him to the ground. *See id.* Peterson was awake by this point and had ceased struggling, but officers handcuffed him, yanked him up by the chain, then delivered a hard knee strike to his thigh. *See id.* Peterson filed a Section 1983 action against the City of Fort Worth, claiming the officers used excessive force to restrain him. *See id.* at 844.

The district court in *Peterson* concluded that the force was not excessive under the circumstances and that, even if the officers had violated Peterson's rights, the city was not liable because Peterson did not show that a policy, practice, or custom of the city was the moving force behind the officers' conduct. *See id.* at 844. On appeal, Peterson argued that the city was liable because the police chief ratified the employees' conduct when, after an investigation, he concluded that the officers had complied with departmental policy. *See id.* The Fifth Circuit rejected Peterson's argument, noting that a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality. *See id.* at 848. According to the Fifth Circuit, *Peterson* was not an "extreme factual circumstance" in comparison to cases in which an egregious mishandling of deadly force went unpunished or altogether unacknowledged by officials. *Id.* at 854. The same logic applies with equal force to this case. *See Cambre v. Smith*, No. 18-6509, 2018 WL 6510897 (E.D. La. Dec. 10, 2018) (granting motion to dismiss and holding sheriff not liable for his subordinate officers' alleged use of excessive force under a ratification theory despite plaintiff's contention that the sheriff investigated the officers' conduct and determined that it complied with departmental policies).

Even if, as Miller alleges, an internal investigation cleared the officers of wrongdoing, the allegations in the Complaint are insufficient to properly support a viable ratification theory against Texas City. "While the mere failure to investigate a police officer's conduct that allegedly violated a person's Fourth Amendment rights cannot amount to ratification, the converse must also be true: The mere decision to investigate and exonerate also cannot amount to ratification." *Griffin v. City of Sugar Land*, No. H-18-3121, 2019 WL 175098, at *12 (S.D. Tex. Jan. 11, 2019). "To hold the city liable because the policymaker concluded that the officers acted appropriately would [improperly] convert liability through ratification into *respondeat-superior* liability." *Id.* (citation omitted). Moreover, the ratification theory must be applied with the understanding that "[p]olicymakers alone can create municipal liability, and so any violation must be causally traceable to them, not just to their subordinates." *Milam*, 113 F. App'x at 626. *See also Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001) (refusing to impose liability based on policymaker's approval of a subordinate's decision without a showing that the policymaker had actual knowledge of the improper basis of the subordinate's decision); *Fraire v. City of Arlington*, 957 F.2d 1268, 1278–79 (5th Cir. 1992) (holding that an unconstitutional custom or policy "cannot be inferred from a municipality's isolated decision not to discipline a single officer for a single incident of illegality") (internal quotation marks and citations omitted). In the present case, there are simply no substantive allegations to be found anywhere in the Complaint that anyone with policymaking authority on behalf of Texas City ratified the individual officers' actions. Dismissal is,

therefore, appropriate. This case does not present an "extreme factual situation" that merits application of the ratification theory of liability under Section 1983.

## CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Texas City's Motion to Dismiss be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 21st day of May, 2019.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE